**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Neill T. McKinnon,<br><br>                                                    Debtor.<br><br>Tri-State Surgical Supply & Equipment LTD.,<br><br>                                                    Plaintiff,<br><br>v.<br><br>Neill T. McKinnon,<br><br>                                                    Defendant. | C/A No. 22-02896-EG<br><br>Adv. Pro. No. 23-80006-EG<br><br>Chapter 7<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

**THIS MATTER** is before the Court on the *Motion for Summary Judgment* ("Motion") filed by Neill T. McKinnon ("McKinnon" or "Debtor"), the Defendant in this adversary proceeding, as to Tri-State Surgical Supply & Equipment LTD's ("Tri-State") complaint seeking to have its unliquidated debt deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), 523(a)(4), and/or 523(a)(6) (the "Complaint").[1] Tri-State filed an *Objection to and Opposition to Motion for Summary Judgment*, and a hearing was held.[2] The parties agree that this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and that the Court has authority to enter a final order and judgment in this matter.[3] For the reasons set forth below, the Court grants Summary Judgment in Debtor's favor as to the claim of nondischargeability pursuant to 11 U.S.C. § 523(a)(4) but denies it as to the other claims.

---

[1] ECF No. 23, filed June 2, 2023.
[2] ECF No. 35, filed July 28, 2023.
[3] Adversary Proceeding Report, ECF No. 6, filed Mar. 21, 2023.

**STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

McKinnon filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 25, 2022, C/A No. 22-02896-EG ("Bankruptcy Case").[4] Tri-State is a retail and wholesale medical supply business licensed under the laws of the State of New York. In Schedule E/F filed in the Bankruptcy Case, McKinnon listed Tri-State as a creditor with a disputed, unsecured claim of $4,860,000.00 for breach of contract.[5] The Chapter 7 Trustee appointed in the Bankruptcy Case filed a Report of No Distribution on December 2, 2022, advising that there is no property from the estate available for distribution to Debtor's creditors over and above that exempted by law.

**A.** *The Federal Action*

The Complaint is based on the same set of facts and predicated upon similar claims raised in litigation ("Federal Complaint") that Tri-State commenced against McKinnon and GoCloud Technologies Inc. ("GoCloud," and collectively with Debtor, "Defendants") in the United States District Court for the Eastern District of New York, Docket No. 12-cv-00333-PKC-TAM (the "Federal Action") on September 20, 2021.[6] The Federal Action includes claims for breach of contract, common law fraud, tortious interference with contract, and tortious interference with prospective economic relations, and seeks damages of at least $4,500,000.00 against Defendants. The claims are based upon allegations that Defendants fraudulently induced Tri-State to enter into a contract with GoCloud (the "Contract") for the sale of medical grade examination gloves ("the Merchandise"), upon Defendants' representations that they were in possession of the Merchandise. Contrary to their representations, the Federal Complaint alleges that Defendants neither owned the

---

[4] C/A No. 22-02896-EG, ECF No. 1.
[5] C/A No. 22-02896-EG, ECF No. 10.
[6] ECF No. 1, Ex. A. The allegations of the Amended Complaint in the Federal Action are incorporated by reference in the Complaint in this adversary proceeding.

2

Merchandise nor were able to fulfill the terms of the Contract, which in turn caused Tri-State to breach various agreements and lose the benefit of other prospective contracts with third parties.

The only document attached as an exhibit to the Federal Complaint is a copy of the Contract—a single-page document purporting to be a "Full Corporate Offer" from GoCloud, as seller, to Plaintiff, as buyer, for the sale and delivery of 120,000 boxes of gloves.[7] The Contract is signed by Dr. Umashankar Das, President and CEO of GoCloud, and Daniel Burg, as Tri-State's representative, and provides that "we confirm with full legal and corporate responsibility that we are ready, willing, and able to sell and deliver the …[120,000 boxes of Nitrile Gloves]." It further provides that GoCloud would pay consultants' fees in connection with the transaction to an unnamed party. McKinnon is not named as a party nor is he a signatory to the Contract.

The Federal Action is presently stayed due to the filing of the Bankruptcy Case, and no judgment has been entered establishing the amount or validity of Tri-State's claims.

**B.** *Adversary Proceeding*

Tri-State commenced this adversary proceeding on January 26, 2023 (the "Adversary Proceeding"), seeking a declaration that its unliquidated claim against McKinnon is nondischargeable despite the Bankruptcy Case for three reasons:[8]  (a) pursuant to 11 U.S.C. § 523(a)(2)(A), as a debt for money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, a false representation, or actual fraud; (b) pursuant to 11 U.S.C. § 523(a)(4), as a debt from fraud or defalcation while acting in a fiduciary capacity; and (c) pursuant to 11 U.S.C. § 523(a)(6), as a debt for willful and malicious injury that McKinnon caused Tri-State or its property. Debtor filed an Answer raising various defenses.[9]

---

[7] ECF No. 1, Ex. 2.
[8] ECF No. 1.
[9] ECF No. 3.

3

Similar to the allegations raised in the Federal Complaint, Tri-State asserts that Defendants enticed Tri-State's representative to fly to California to inspect the Merchandise under the premise that it was available for inspection, when in fact the Merchandise was not in Defendants' possession. Tri-State further alleges that while its representatives were in California and as a condition to inspect the goods, Defendants requested that Tri-State provide them with "confidential and personal financial information and asset attestations, which, upon information and belief, was misused by the Debtor and GoCloud."[10] In the Answer, McKinnon asserts that he is the president and owner of Latitude Healthcare, LLC, a healthcare consulting firm separate and distinct from GoCloud, and that at all times relevant to the litigation, Latitude Healthcare, LLC was acting as a broker in the transaction between Tri-State and Go-Cloud for the purchase of the Merchandise.[11]

Upon the conclusion of the discovery period and prior to the expiration of the deadline set in the Court's Scheduling Order, McKinnon filed the Motion on June 2, 2023 seeking summary judgment as to all three claims,[12] and Tri-State objected.[13] The Court held a hearing on the Motion at which Tri-State confirmed that it is not seeking to have the amount of the debt determined through this Adversary Proceeding; rather, once the Court determines the dischargeability of the underlying debt, the parties will proceed with the Federal Action to determine the amount of the

---

[10] ECF No. 1 at ¶ 50.
[11] ECF No. 3 at ¶¶ 35-37.
[12] The Court previously entered an Order Granting Summary Judgment based upon Tri-State's failure to timely respond to the Motion, but the order was subsequently vacated by a consent order entered on July 21, 2023, which provided Tri-State with a further opportunity to respond to McKinnon's Motion.
[13] ECF No. 35.

4

liability, if any.[14] Prior to the hearing, the parties filed a Joint Statement of Dispute setting forth their respective positions on the issues presented in the Motion.[15]

## CONCLUSIONS OF LAW

### I. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

---

[14] When a bankruptcy court addresses the dischargeability of a debt, it is often the case that the liability was previously determined and liquidated. The Court, however, notes that is not always the case, and when the amount of the claim is still in dispute, the issue can be addressed through a two-step process, with the dischargeability of the debt being decided prior to the debt being reduced to judgment. Section 523 governs the exception to the dischargeabilty of a "debt," which is defined simply as a "liability on a claim." 11 U.S.C. § 101(12). A claim, in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). These definitions reflect that bankruptcy courts may determine whether unliquidated debts are dischargeable without addressing the extent of the damages. *See In re Estrin*, C/A No. 14–04795–DD, Adv. Pro. No. 15–80039–DD, 2016 WL 691506, at *8 (Bankr. D.S.C. Feb. 19, 2016) (holding that a showing of nondischargeability does not require a court to determine the exact amount or extent of the debt). As set forth in the scheduling order setting the pre-trial status conference entered contemporaneously with this order, because some—if not all—of the issues underlying this Adversary Proceeding are related to the facts and issues raised in the Federal Action, the Court seeks further briefing as to whether it would be in the interest of the parties and judicial resources for this Court to hold the hearings on the remaining causes of action in this underlying Adversary Proceeding in abeyance until the Federal Action is litigated to conclusion in the District Court for the Eastern District of New York.

[15] ECF No. 41, filed Aug. 15, 2023.

5

The moving party has the burden of proving that summary judgment is appropriate. *Id.* When determining whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). "When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case." *Dan Ryan Builders W. Virginia, LLC v. Main St. Am. Assurance Co.*, 452 F. Supp. 3d 359, 364–65 (D.S.C. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325). The non-moving party must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. at 324).

**II.** *Discussion*

McKinnon asserts that summary judgment is proper because Tri-State's evidence is insufficient to establish the elements of a claim under 11 U.S.C. § 523(a)(2), (4), and/or (6). As the defendant in this action, McKinnon does not bear the ultimate burden of persuasion on Tri-State's § 523 claims at trial; therefore, he may meet his burden regarding the Motion by demonstrating to the Court that there is no evidence supporting Tri-State's case. *See Dan Ryan Builders,* 452 F. Supp. 3d at 364-65. No affidavits or other evidence were presented in support of

6

either the Motion or the Objection. Accordingly, the Court's review of whether summary judgment is appropriate is limited to the pleadings and the record from the hearing on the Motion.

### a. 11 U.S.C. § 523(a)(2)

Exceptions to discharge are construed narrowly "to protect the purpose of providing debtors a fresh start." *Nunnery v. Rountree (In re Rountree),* 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 130 (4th Cir. 1999)). Under § 523(a)(2)(A), a discharge granted in a Chapter 7 case, "does not discharge an individual debtor from any debt . . . for money, property, or services, or an extension, renewal, or refinancing of credit, to the extent obtained by, . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To prevail under section 523(a)(2)(A), Tri-State must first make a threshold showing that McKinnon obtained or gained *something* from the creditor through his fraud or false representations. *Rountree,* 478 F.3d at 222 (holding that "[a] plain reading of this subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit."). The Fourth Circuit has indicated that "Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Id.* at 219-20. In addition, the Fourth Circuit has explained that a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Id.* at 218.

While Tri-State has the burden of establishing all the elements necessary for a determination that it holds a debt and that such debt is nondischargeable at trial, as the non-moving

7

party defending against a motion for summary judgment, Tri-State must simply set out specific material facts that establish a genuine issue as to each element of § 523(a)(2)(A) to survive the motion and proceed to trial. McKinnon argues that summary judgment as to the first cause of action should be granted in his favor because Tri-State has not alleged that McKinnon obtained any money, property, services, or credit from Tri-State—a crucial element for the claim to survive. McKinnon points to the express language of 11 U.S.C. § 523(a)(2), which applies only to debts "for money, *property*, services, or an extension, renewal, or refinancing of credit, *to the extent obtained by"* fraud or false representations. 11 U.S.C. § 523(a)(2)(A) (emphasis added). Tri-State, however, contends that the Complaint alleges that McKinnon obtained "confidential and personal financial information and asset attestations, which, upon information and belief, was misused by the Debtor and GOCLOUD," which is sufficient to show that McKinnon indeed obtained "property".[16]

The first question is whether Tri-State's transfer of financial documents and attestations amounts to a transfer of "property" as contemplated by the statute. In the context of dischargeability determinations, the Supreme Court has stated that "at most [the term 'property'] denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process." *In re Moore,* 365 B.R. 589, 601 (Bankr. D. Md. 2007) (quoting *Gleason v. Thaw,* 236 U.S. 558, 561 (1915), *aff'd* 347 F. App'x 971 (4th Cir. 2009)). At the hearing, Tri-State's counsel explained that Defendants obtained Tri-State's financial attestations and documents and presented that information to the suppliers of the Merchandise to establish the purchaser's financial standing so that they would then release the goods to Defendants. Tri-State, however, alleges that, contrary to

---

[16] ECF No. 1, ¶ 50.

8

the representations that Defendants were in possession of the gloves and were ready, willing, and able to sell and deliver the Merchandise to Tri-State, Defendants intended to sell the Merchandise to third parties willing to pay more.  Interestingly, the Court notes that Tri-State raised this theory for the first time in response to the Motion and did not expressly raise those allegations in the Complaint or the Federal Complaint.  While it is not entirely clear to the Court what was transferred in terms of documents or attestations, under the broad definition of "property" and viewing the facts in the light most favorable to Tri-State, the transfer of financial information in this case may constitute a sufficient transfer of "property" to bring this transaction within the framework of § 523(a)(2)(A).

As to the remaining elements for a claim under § 523(a)(2)(A), McKinnon has not met his burden of establishing the nonexistence of genuine issues of material facts as to the falsity of the representation, Debtor's knowledge and intent, and the proximate cause of the damages sustained. Among other things, McKinnon appears to argue that Tri-State could not prove that the alleged false representation that enticed it to turn over the financial information was the proximate cause of Tri-State's damages resulting from the cancellation of contracts with third parties.  Proximate cause "requires proof of both causation in fact and legal cause."  *Muhler Co., Inc. v. Ply Gem Holdings, Inc.,* 637 F. App'x 746, 748 (4th Cir. 2016) (citing *Hurd v. Willamsburg Cty.,* 579 S.E.2d 136, 144 (S.C. Ct. App. 2003)).  To show causation in fact, Tri-State must demonstrate that its "'injury would not have occurred 'but for' the defendant's' misconduct." *Id.* (citing *Bishop v. S.C. Dept. of Mental Health,* 502 S.E.2d 78, 83 (S.C. 1998)).  To show legal cause, Plaintiff must demonstrate that the injury was foreseeable. *Id.*

While the pleadings do not elaborate on the causation issue or clearly draw a connection between Defendants' representations and the damages that Tri-State claims to have sustained, in

9

the objection to the Motion and at the hearing, Tri-State appears to argue that it lost customers and sustained damages as a result of providing the financial information to Defendants showing their stable financial standing, which Defendants then presented to their suppliers so that they would release the Merchandise, which Defendants in turn sold to other buyers with more unstable financial standing but willing to pay a higher price for the goods. Tri-State contends it was forced to breach contracts with third parties made in reliance upon Defendants' representations, thus resulting in millions of dollars in damages. Aside from unsupported and vague arguments, McKinnon did not provide portions of depositions, affidavits, or other documents for the Court to conclude that a genuine issue of material fact does not remain. Under the circumstances of this case, the determination of proximate cause appears to be a factual issue best left for trial. *Muhler Co., Inc. v. Ply Gem Holdings, Inc.,* 637 F. App'x 746, 748 (4th Cir. 2016) (citing *Cody P. v. Bank of Am., N.A.,* 720 S.E.2d 473, 478-79 (S.C. Ct. App. 2011)) ("Proximate cause generally is an issue of fact for the jury, to be decided as a matter of law only in 'rare or exceptional cases' where 'the evidence is susceptible to only one inference.'").

The Court struggles to see the connection between McKinnon obtaining Tri-State's financial attestations and the ultimate damages that Tri-State claims to have suffered. However, taking all inferences in Tri-State's favor, the Court finds that genuine issues of material facts remain on various elements required pursuant to § 523(a)(2)(A) for which Tri-State will carry the burden of proof at trial. Accordingly, McKinnon's Motion is denied as to Tri-State's claims under § 523(a)(2)(A).

b. **11 U.S.C. § 523(a)(4)**

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation" committed by one "acting in a fiduciary capacity", as well as debts from "embezzlement or larceny." 11 U.S.C.

§ 523(a)(4); *In re Strack,* 524 F.3d 493, 497 (4th Cir. 2008) (citing *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997)). At the hearing on the Motion, Tri-State confirmed that it is not alleging embezzlement of funds or larceny. Tri-State instead alleges that its debt is nondischargeable because McKinnon committed fraud while acting in a fiduciary capacity. McKinnon, on the other hand, asserts that Tri-State cannot prove the elements of 11 U.S.C. § 523(a)(4) because there is no evidence of any fiduciary relationship as contemplated by the statute.

Tri-State contends that, at the time McKinnon made the alleged fraudulent representations, "Debtor was acting in a fiduciary capacity as an officer and/or principal and/or representative of GOCLOUD."[17] Tri-State did not allege, however, that either McKinnon or GoCloud had a fiduciary relationship <u>with</u> Tri-State. At the hearing, Tristate's counsel indicated that the fiduciary relationship was created because of Tri-State entrusting financial information to McKinnon as a "member" of GoCloud in connection with its buyer/seller relationship. This assertion is not supported by either the allegations of the Complaint[18] or the Federal Complaint, which are void of any allegations regarding Tri-State entrusting McKinnon with its financial information in a manner which rises to the level of a fiduciary relationship. Said differently, this argument appears to be an effort to grasp at straws to make the facts fall within the requirements of the statute.

Courts have generally applied a restrictive interpretation of the term "fiduciary" as used in § 523(a)(4), noting that its meaning in this context is more restrictive than its common law counterpart. *Bearden v. Jackson (In re Bearden),* 382 B.R. 911 (Bankr. D.S.C. 2008); *see also In re Wilkerson,* 644 B.R. 349, 366 (Bankr. E.D. Va. 2022) ("Bankruptcy law controls who is a fiduciary for the purposes of § 523(a)(4)"). Historically, it appears that in this Circuit, the term

---

[17] ECF No. 1 at ¶ 47.
[18] The Complaint states only that "while relying on the previous statements and representations made by the Debtor, the Debtor requested and Tri-state provided to Debtor and GOCLOUD confidential and personal financial information and asset attestations, which, upon information and belief, was misused by the Debtor and GOCLOUD."

11

"fiduciary capacity" has been limited to technical trusts, express trusts, or statutorily imposed trusts, and not equitable or implied trusts or trusts implied by law as arising out of a contract. *Id.* (citing cases); *see also Com. Cash Flow, L.L.C. v. Matkins (In re Matkins),* 605 B.R. 62 (Bankr. E.D. Va. 2019) (finding that a contractual relationship alone is not sufficient to establish a fiduciary relationship but the intent to create an express trust may establish a fiduciary relationship). "In an express or technical trust, the trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation . . . ." *In re Aman,* 498 B.R. 592, 603 (Bankr. N.D. W. Va. 2013) (internal quotations omitted) (citing *Harrell v. Merchant's Express Money Order Co. (In re Harrell),* No. 98-1728, 1999 WL 150278, at *2-3 (4th Cir. Mar. 19, 1999)). "The fiduciaries contemplated under 11 U.S.C. § 523(a)(4) are 'persons in positions of ultimate trust,' including 'public officers, executors, administrators, guardians, trustees of express trusts, attorneys, and corporate directors.'" *Webb v. Isaacson (In re Isaacson)*, 478 B.R. 763, 779 (Bankr. E.D. Va. 2012) (citing *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 169-70 (Bankr. D. Md. 1999)).

As is the case here, this Court has previously found that there is no fiduciary relationship between a seller and purchaser in the context of § 523(a)(4). *Bearden,* 382 B.R. at 918. There are no allegations or materials in the record indicating the existence of or intent to create an express trust between either McKinnon and Tri-State or GoCloud and Tri-State. There is no indication from the record that the parties agreed that McKinnon would hold Tri-State's financial information in trust. Tri-State has not identified a statute or common law doctrine imposing a trust-like obligation on McKinnon under any applicable state law sufficient to create a technical trust relationship. *See Aman,* 498 B.R. at 604 (noting that relationships that may have the requisite attributes for fiduciary duty under § 523(a)(4) in the absence of an express trust include financial advisor/client, real estate agents handling closing funds, attorneys handling client funds, corporate

12

officer and director mishandling corporate funds, and those acting under power of attorney to an incompetent person) (citing cases). Plainly stated, Tri-State has not identified, by affidavit or otherwise, any evidence indicating that McKinnon was acting in a fiduciary capacity in any way that would satisfy the requirements of § 523(a)(4).[19] Accordingly, the Court finds there is no genuine issue of material fact as to whether a fiduciary relationship existed between them and grants summary judgment in McKinnon's favor as to the claim under § 523(a)(4).

c. **11 U.S.C. § 523(a)(6)**

Section 523(a)(6) prohibits the discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[Section] 523(a)(6) applies only to acts done with the actual intent to cause injury….[and] is not satisfied by negligent, grossly negligent or reckless conduct." *In re Duncan,* 448 F.3d 725, 729 (4th Cir. 2006). "[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Fourth Circuit has held that "a creditor challenging dischargeability under § 523(a)(6) must prove that the debtor had an intent to injure." *In re Muhs,* 923 F.3d 377, 379 (4th Cir. 2019) (citing *Duncan,* 448 F.3d at 730). "Simple breach of contract . . . , even if intentional, would not give rise to a Section 523(a)(6) violation." *Ocean Equity Grp., Inc. v. Wooten (In re Wooten),* 423 B.R. 108, 130 (Bankr. E.D. Va. 2010). For purposes of § 523(a)(6), "willful" has been defined as requiring "deliberate or intentional acts, while 'malicious' refers to acts that are wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." *Whitley v. Donnell (In re Donnell),* C/A No. 16-05131-DD, Adv. Pro. No. 17-80049-DD, 2018 WL 4354368, at *7 (Bankr.

---

[19] The Contract attached to the Federal Complaint does not indicate that McKinnon had any role in the transaction. It references a consultant to be paid by GoCloud upon completion of the transaction, but McKinnon is not identified anywhere on this document.

13

D.S.C. Sept. 11, 2018) (internal quotations omitted) (citing cases). To determine whether the debtor's conduct was "willful," the Court looks to the debtor's subjective state of mind, and to determine "malice," the Court may imply malice through "the acts and conduct of the debtor in the context of the surrounding circumstances." *Id.* (quoting *First Nat'l Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 668 (4th Cir. 1995)).

McKinnon posits the transaction at issue was simply a business deal that all parties wanted to complete, and Tri-State cannot show any evidence of willful and malicious conduct. On the other hand, Tri-State alleges that (a) McKinnon fraudulently induced it to enter into the Contract when he knew neither he nor GoCloud possessed the Merchandise, (b) McKinnon made the false representations with the intent that Tri-State would rely on them; (c) in reliance of these representations, Tri-State provided the Defendants with financial information and entered into agreements with third parties to purchase the additional goods which it ultimately was unable to fulfill, and (d) McKinnon had knowledge of those agreements and intentionally and improperly engaged in this conduct for the purpose of inflicting intentional harm on Tri-State.

Based on all these allegations, against which McKinnon has not advanced any documents, affidavits, declarations, or any other support to dispute their veracity, Tri-State asserts that there is a genuine issue of material fact regarding whether McKinnon's conduct was "willful and malicious" under § 523(a)(6). Viewing the facts alleged in the Complaint and the Federal Complaint in the light most favorable to the Tri-State, the Court agrees. Accordingly, McKinnon's motion for summary judgment on Plaintiff's § 523(a)(6) claim is denied.

## CONCLUSION

For the reasons set forth above, McKinnon's motion for summary judgment as to Tri-State's § 523(a)(4) claim is GRANTED, and McKinnon's motion for summary judgment as to Tri-State's § 523(a)(2) and § 523(a)(6) claims is DENIED.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**09/25/2023**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 09/25/2023

15